IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID CICHON,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,[1]<br><br>    Defendant. | No. 12 C 2081<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff David Cichon's ("Cichon" or "Claimant") claim for Social Security Disability benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Cichon's motion for summary judgment [Doc. No. 23] is granted in part and denied in part. The Government's motion for summary judgment [Doc. No. 25] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as defendant in this suit.

# BACKGROUND

## I. PROCEDURAL HISTORY

Claimant originally filed a Title II application for Disability Insurance Benefits and a Title XVI application for Supplemental Security Income on January 5, 2009 based on pain resulting from multiple fractures of his left leg. (R. 159–69) In both applications, Claimant alleged disability beginning August 1, 2007. (R. 159, 162.) Claimants's claims were initially denied on July 14, 2009. (R. 64-65.) The claims were again denied upon reconsideration on December 16, 2009. (R. 66-67.) Claimant filed a timely request for a hearing by an Administrative Law Judge ("ALJ"), which was held on February 25, 2011. (R. 38.) Plaintiff personally appeared and testified and was represented by counsel. (R. 38.) A vocational expert ("VE"), Dr. Richard Hamersma, also testified at the hearing. (R. 38.)

On March 8, 2011, the ALJ denied Claimant's claim for benefits and found him not disabled under the Social Security Act. (R. 31.) The Social Security Administration Appeals Council denied Claimant's request for review on September 28, 2011, (R. 5-7,) leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND

### A. Cichon's Background

Cichon was born on April 25, 1962. (R. 162.) At the time of the hearing, he was forty-eight years old, living with his mother, and was not employed. (R. 42–43.) Cichon has no minor children. (R. 42.) He is a high school graduate and has no special training. (R. 43.) Cichon fractured bones in his left leg multiple times between 2007 and 2009. (R. 40.) He has not worked since he originally fractured his ankle in 2007. (R. 43.) Plaintiff previously worked as a laborer in underground construction, a delivery person for a wholesale meats company, an installer for a home security company and a maintenance engineer, in addition to performing various hourly jobs. (R. 194.) Plaintiff's labor history ends in 2006, roughly a year before he sustained his injury. (*Id.*)

### B. Testimony and Medical Evidence

#### 1. Cichon's testimony

Cichon testified that he is able to do light housework, albeit more slowly than before he fractured his ankle due to his need for frequent breaks. (R. 44–45.) Sitting for more than 45 minutes causes Cichon discomfort. (R.46.) It is painful for him to stand for over 30 minutes. (*Id.*) He cannot walk more than a block and a half. (*Id.*) He can lift around twenty pounds on his right side, but avoids lifting anything on his left side to prevent placing stress on his left leg. (R. 47.) He occasionally visits a friend who lives nearby. (R. 46.)

3

To manage his pain, Cichon takes Aleve every morning and rubs Aspercreme on affected areas three or four times a day to help limit the pain in his leg. (R. 46.) He also does stretching exercises to help with pain. (R. 45.) The exercises typically last around 30 minutes. (R. 47.) He has not been to the doctor since 2009 because he lacks insurance. (R. 45.)

2. **Medical evidence**

On August 27, 2007, Dr. Oscar Schiappa issued an operative report detailing his pre-and post-operative of assessment of Cichon's leg. (R. 285.) Schiappa's report indicates that Cichon had a three to four week-old fracture of his lateral malleolus. (*Id.*) Schiappa performed an operation on Cichon, manipulating his malleolus, performing a closed reduction of the bone, and applying a short-leg cast. (*Id.*) Cichon was directed to keep the cast elevated and to bear partial weight as his leg would tolerate; the cast was scheduled to be removed three weeks from the date of surgery. (*Id.*)

Cichon presented to Oak Forest Hospital on September 17, 2007. (R. 283.) He was walking on crutches and reported 5/10 pain in his leg. (*Id.*) The notes observe that Cichon was suffering from osteoarthritis and he was instructed to return in two weeks to have the cast removed. (*Id.*) Cichon's cast was removed on October 1, 2007. (*Id.*) At a follow up exam on October 21, 2007, Cichon was ambulating (walking) well and denied swelling, although he complained of 5/10 pain "on and

off." (R. 282.) Cichon returned for another follow up visit on February 15, 2008. (R. 280.) He continued to complain of pain as 5/10, including during extended periods of standing or when he was at rest. (*Id.*)

On October 11, 2008, Cichon was seen at the emergency room claiming that he had fallen down the stairs ten days earlier and that pain in his left ankle and left knee had not improved during that time. (R. 249.) Cichon was prescribed Naproxin and x-rays were taken. (*Id.*) X-rays of Cichon's left ankle showed a complete oblique fracture of the distal fibula with relatively undisplaced fracture fragments. (R. 256.) X-rays of his left knee revealed a lateral tibial plateau fracture of the proximal tibia. (R. 257.) X-rays taken during a November 14, 2008 visit to the podiatry clinic displayed comminuted fractures of the lateral malleolus with soft tissue swelling. (R. 255.) Cichon reported 0/10 pain in his ankle during this visit. (R. 278.) A December 5, 2008 x-ray of Cichon's left ankle showed that his distal fibular fracture was nearly healed with undisplaced fracture fragments. (R. 254.)

Cichon returned to Dr. Schiappa on January 23, 2009 and was evaluated for left knee arthritis. (R. 275.) He stated that he was in pain, rating it as 6/10, and Dr. Schiappa took x-rays, did a physical examination of Cichon's left knee, and administered 40 milligrams of DepoMedrol. (*Id.*) Cichon's x-rays showed deformity at the lateral tibial condyle, suggesting slight arthritic change at the left knee joint, lateral condyle, or lateral aspect. (R. 253.) The x-rays revealed that Cichon's right knee was normal. (*Id.*)

5

After a fall taking out the garbage, Cichon again returned the hospital on January 28, 2009. (R. 274.) X-rays taken during that visit revealed a relatively undisplaced oblique fracture of the left distal fibula with callous at the fracture site. (R. 252.) The x-ray results showed a healing distal fibular fracture. (*Id.*)

Notes from Cichon's visits to Oak Park Hospital for physical therapy between February 4 and February 6, 2009 discuss two separate broken ankles suffered by Cichon in August 2007 and October 2008. (R. 271.) The physical therapist noted decreased patellar mobility, swelling of the left foot, and pain in the right knee during range of motion testing. (*Id.*) The physical therapist noted no swelling in Cichon's left knee. (*Id.*) Cichon complained of 5/10 pain in his left knee and 4/10 pain in his left ankle. (R. 272.) Cichon had difficulty walking more than 350 feet, climbing and descending 12 stairs, and walking on his heels (R. 271.) Based on decreased left lower extremity strength, decreased range of motion, and other problems with Cichon's left leg, the physical therapist recommended a set of stretching and strengthening exercises. (R. 273.) Cichon was instructed to visit the physical therapist twice a week for eight visits. (*Id.*)

Cichon returned for physical therapy regularly from February to early early April, 2009. (R. 264–68, 270.) On February 27, Cichon stated "I feel better now," but mentioned a problem with getting transportation to physical therapy appointments and said he could only attend once per week. (R. 268.) The physical therapist noted that Cichon was experiencing 5/10 pain in his left knee and 6/10 pain in his left

6

ankle. (*Id.*) At a March 6, 2009 visit, Cichon noted that his ankle pain "calms down about [two] hours after therapy" with icing. (R. 267.) The March 6, 2009 notes also report that Cichon's left ankle exhibited increased tolerance to ambulation (*Id.*)

On March 11, Cichon presented to Dr. Maureen McShane for follow up care. (R. 263.) Dr. McShane noted that Cichon's fibular fracture had healed well and that he was doing well in physical therapy except for when doing squats, which caused him foot and knee pain. (*Id.*) Dr. McShane recommended switching to an exercise that caused Cichon less pain. (*Id.*) Physical therapy notes from the same day report 4/10 left knee and ankle pain. (*Id.*) The notes also indicate increase agility and decreased left lower extremity pain. (*Id.*) Cichon missed his last scheduled appointment with Dr. Schiappa in the record on April 24, 2009. (R. 266.)

On November 19, 2009, Dr. Liana Palacci saw Cichon for an internal medicine consultative examination. (R. 297--300.) Dr. Palacci noted the following x-ray records: (1) a March 5, 2009 x-ray indicating a fractured left distal fibula; (2) a February 26, 2009 x-ray indicating a slight arthritic change in the left knee and a normal right knee joint; (3) an Janury 7, 2009 x-ray indicating a healing left distal fibula fractura; (4) an October 29, 2008 x-ray indicating a left proximal tibia fracture; and (5) an October 29, 2008 left foot x-ray indicating a normal left foot. (R. 297.) The exam notes detail Cichon's history of fractures, as well as stiffness in his ankle and daily pain, which Cichon reported was exacerbated by walking and cold weather. (R. 297–98.) Dr. Palacci also described Cichon's left proximal tibia

7

fracture, stating that he received cortisone injections but never wore a cast or received surgery for the injury. (R. 298.) Cichon stated that walking worsened the pain in his left knee. (*Id.*) Dr. Palacci noted that Cichon was taking Nabumetone. (*Id.*) In her musculoskeletal exam, Dr. Palacci indicated that Cichon wore a left ankle ACE bandage and that there was no evidence of knee crepitus or swelling. (R. 299.) Cichon's gait was reported to be non-antalgic without assistive devices and that the range of motion in his hips, knees, and ankles was normal. (*Id.*) Dr. Palacci's clinical impressions were that Cichon complained of left ankle pain, which was secondary to his healed left distal fibular fracture and that he complained of left knee pain with no objective findings. (R. 300.)

### 3. Vocational expert's testimony

The vocational expert ("VE") testified that a person of Cichon's age, education, and work experience, with the residual functional ("RFC") capacity to perform a range of light work — but only able to frequently push and pull with his left lower leg — and able to balance, stoop, kneel, crouch, and crawl, could work in a variety of jobs in the regional and national economy. (R. 57–58.) Jobs available to the hypothetical worker would be in assembly (5,000 jobs), hand-packaging (7,000 jobs), and inspection (5,000 jobs). (R. 58.) When asked to limit the hypothetical person's physical capacity further to sedentary work with occasional postural limitations, the VE testified that such a person would be able to work as a sedentary hand-packager (1,500 jobs), a sedentary inspector (1,000 jobs), or as a cashier (4,000 jobs). (*Id.*) Further limited to only sitting for 30 minutes at a time

and needing to be off task for 30 minutes to stretch after sitting, the VE testified that the hypothetical person could not perform any jobs in the economy. (R. 58–59.) If that person were to limit stretching to during fifteen minute breaks in the morning and afternoon and a thirty minute break for lunch, the VE testified that they would be able to work in light work and sedentary jobs. (R. 59.) The VE noted that needing additional time to perform stretches outside of breaks would disqualify the hypothetical person from available jobs. (*Id.*) The VE testified that the time off-task allowed at a typical job is ten to twelve percent. (R. 60.) When asked whether a person who needed 30 percent of the day to be off-task could sustain gainful employment, the VE stated that would not be possible. (R. 60.)

The VE testified that a hypothetical person needing accommodation to elevate his leg 90 degrees while working would eliminate the listed available jobs. (R. 60.) However, he clarified that elevating the leg at a "small height" would not be a significant factor in the person finding employment. (*Id.*)

### C. ALJ Decision

On March 8, 2011, the ALJ found that Cichon had not engaged in substantial gainful activity from his alleged disability onset date of August 1, 2007. (R. 25.) The ALJ also found Cichon's two status post left fibula fractures and left knee degenerative joint disease to be severe impairments. (*Id.*) The ALJ found that Cichon's impairments did not meet or equal a medically determinable impairment or combination of impairments. (R. 25.) Her conclusion was based on Cichon's ability to ambulate within twelve months of each of his injuries. (R. 25–26.)

The ALJ next determined that Cichon had the residual functional capacity to lift and carry ten pounds, to stand and walk two hours out of an eight-hour day, and to frequently push and pull with his right lower leg, with limitations in his ability to push and pull with his left lower leg due to previous fractures and arthritis in his left knee. (R. 28.) The ALJ concluded that these limitations suggested that Cichon should be restricted from a variety of activities, including climbing, balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs. (*Id.*) The ALJ found Cichon's testimony regarding the intensity, persistence, and limiting effects of his symptoms not to be credible because they were inconsistent with his RFC. (R. 29.)

The ALJ found that Cichon was unable to perform any of his past relevant work as a heavy, semi-skilled laborer. (*Id.*) However, the ALJ concluded that based on Cichon's age, education, work experience, and RFC, he could perform work in positions available in the regional economy, including work as a hand packager, an inspector, or a cashier. (R. 30.) Based on this conclusion, the ALJ found that Cichon had not been under a disability from the time of his initial claim through the decision and accordingly denied his application for benefits. (R. 31.)

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step (3) or step (5) leads to a finding that the claimant is disabled. *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than step (3), precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps (1)-(4). *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides, in relevant part, that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as s adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The Court many not substitute its own judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the anlysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634

12

(7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Cichon argues that the ALJ decision was in error because the ALJ: (1) failed to properly assess medical evidence of Cichon's leg injuries; (2) failed to properly assess Cichon's credibility regarding the intensity, persistence, and limiting effects of his leg pain; (3) failed to obtain necessary treating records, thus evaluating an incomplete record; and (4) improperly disregarded the VE's testimony that there were no jobs available for a person in Cichon's condition.

#### A. <u>Assessment of Medical Evidence</u>

Cichon argues that the ALJ mischaracterized the medical evidence in the record for three reasons. First, the ALJ miscounted the number of fractures Cichon suffered. Second, the ALJ did not find that Cichon needed to elevate his leg during the day. Third, the ALJ depended on Dr. Palacci's report in reaching her conclusion, but ignored critical information concerning Cichon's injuries contained within it.

Where an ALJ mischaracterizes significant facts in the medical record, remand is appropriate. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916–17 (7th Cir. 2003) (holding that ALJ's finding that claimant had "no herniations" was inconsistent with available medical evidence and warranted remand). The ALJ's decision describes Cichon as having "two fractures" when describing his work restrictions. (R. 29.) In fact, Cichon suffered either four or five fractures in his left lower extremity, including a left ankle fracture treated on August 27, 2007, a second left ankle fracture treated in October, 2008, a third possible fracture of the calcaneum reported on November 14, 2008, a fracture of Cichon's lateral tibial plateau reported on November 11, 2008, and another fracture of his left distal fibula on January 28, 2009. While Cichon answered affirmatively when asked if he had two fractures by the ALJ, (R. 47,) this evidence is at odds with x-ray reports in the record indicating that Cichon suffered several fractures between 2007 and 2009 and should have been reconciled with contrary evidence. Where, as here, the ALJ has ignored significant evidence that is contrary to her conclusion "it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence." *Golombiewski*, 322 F.3d at 917.

The ALJ's finding that "no objective medical evidence" supported Cichon's claim that he needed to elevate his leg at hip level was also in error. The Seventh Circuit has previously found that an ALJ may not simply dismiss a claimant's assertion that hip elevation is necessary without explanation. *See Smith v. Astrue*, 467 F. App'x. 507, 510-11 (7th Cir. 2012) (remanding because, while the ALJ cited

14

some medical evidence contrary to the complainant's claims, she "did not explain *how* the records undermined Smith's testimony that she needed to elevate her leg.) This case presents even less reasoning than was before the court in *Smith*, as the ALJ ignored Cichon's testimony, (R. 49–50,) physical therapy records (R. 271,) and a post-operative report (R. 285,) all of which suggested that Cichon keep his leg elevated. Failure to evaluate this evidence before concluding that Cichon did not need to elevate his leg — a significant factor in whether jobs were available to Cichon — was in error.

The ALJ's reliance on Dr. Palacci's testimony in reaching her conclusions was not in error. Palacci's conclusions were contrary to other evidence in the record and entitled to be given appropriate weight by the ALJ. The ALJ's weighing of this evidence was proper and does not warrant a remand on its own. However, other errors the ALJ made in assessing the record are sufficient to justify a remand.

On remand, the ALJ should examine the record more closely, giving full treatment to each of Cichon's injuries as well as evidence of the need to elevate his leg for the purpose of pain management.

### B. Assessment of Claimant's Credibility

The ALJ's assessment that Cichon statements "concerning the intensity, persistence, and limiting effects" of the pain in his leg as a result of his injuries were not credible, (R. 29,) was an error. The Seventh Circuit has stated that "[a]n ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical diagnostic examination results." *Pierce v.*

15

*Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014). The ALJ's statement that "the objective and clinical findings are not as severe as one would expect given his complaints of pain," (R. 28,) highlight this concern.

Furthermore, language to the effect that a claimant's statement about his symptoms are "not credible to the extent that they are inconsistent with the above residual functional capacity," which appeared in the ALJ's decision here, have been criticized as "meaningless boilerplate." *Pierce*, 739 F.3d at 1046; *see also Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013) (same). The ALJ's selections from the record do not adequately support her conclusion that Cichon was not credible in claiming a need to do intermittent exercises during the day to relieve pain in his leg, as she only mentions that this was not discussed with his treating physicians. (R. 28–29.)

The ALJ also erred in her credibility determination based on Cichon's conservative treatment and her statement that "[a]lthough claimant has no money, and no medical card, it would appear that if he were as limited as he alleged he would try to avail himself more of free clinics for medical care." (R. 29.) ALJ's should not heavily base their conclusions regarding a claimant's credibility on a lack of treatment without assessing the reasons for its absence. *See* SSR 96–7p(4); *Pierce*, 739 F.3d at 1050. Here, the overbroad assumption about the availability of free medical clinics Cichon might have sought out for treatment was in error. *See*

*Woolridge v. Barnhart*, No. 03 C 0105, 2004 WL 2066918, at *6 (N.D. Ill. Sept. 8, 2004) ("[T]he ALJ's assertion about free medical aid is overbroad and definitely not supported in the record.")

The above errors show that the case should be remanded with instructions that the ALJ consider only what is in the record in her assessment of Cichon's credibility. The ALJ is also instructed to identify the elements of the record which support her conclusions regarding Cichon's credibility with greater specificity.

C.  **Development of the Record**

While Cichon claims that the record is missing critical evidence as to the extent of his injuries and symptoms, the record before the ALJ was sufficient to make a finding on Cichon's claim for benefits. While ALJs "may purchase a consultative examination to try to resolve and inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination," 20 C.F.R. § 404.1519a(b), "[t]he ALJ is not required to order to such examinations . . . ." *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007). The absence of some dictations associated with medical examinations — the content of which can be derived from contemporaneous submissions in other parts of the record — and the lack of "specialized medical evidence" in the form an orthopedic opinion do not show that the record was incomplete for the purposes of evaluation by the ALJ.

### D. Treatment of VE Testimony

The ALJ's hypothetical questions to the VE and subsequent conclusions about the range of work Cichon could engage in were not in error. The ALJ reasonably based her conclusion on the testimony of the VE. Although the ALJ erred in her assessment of the medical evidence and Cichon's credibility, the ALJ's interactions with the VE indicate no independent reason to remand. The only discrepancy between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT") was resolved during testimony, where the VE stated that his findings were consistent with the DOT aside from his description of the exertional demands of the hand-packager job.

(R. 60.) *See Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) ("[T]he ALJ was permitted to rely on the VE's opinion, even if the VE contradicted the DOT.") The record does not warrant a different assessment of the VE's testimony on remand.

## CONCLUSION

For the foregoing reasons, plaintiff David Cichon's motion for summary judgment [Doc. No. 23] is granted in part and denied in part and the Government's motion for summary judgment [Doc. No. 25] is denied. The Court finds that this matter should be remanded to the Commissioner of Social Security for further proceedings consistent with this order.

**SO ORDERED.**  **ENTERED:**

**DATE:**    **March 7, 2014**

*/s/ Maria Valdez/*

**HON. MARIA VALDEZ**

**United States Magistrate Judge**